**UNITED STATES of America,
Appellee,**

v.

**Robert Willard ADAMS, Appellant.**

**No. 71-1102.**

United States Court of Appeals,
Ninth Circuit.

July 7, 1971.

---

Stephen A. Gerst (argued), of Cohen, Gerst & Groseclose, Phoenix, Ariz., for appellant.

Patricia Whitehead, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., J. Jenckes, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY and CARTER, Circuit Judges, and BELLONI, District Judge.*

HAMLEY, Circuit Judge:

Robert Willard Adams appeals from his conviction on a jury verdict of receiving stolen United States postage stamps in violation of 18 U.S.C. § 641, and burglary of a United States Post Office, in violation of 18 U.S.C. § 2115.

The only question presented is whether, under the circumstances of this case, the district court erred in admitting into evidence hearsay testimony of a declaration implicating defendant, while the declarant was engaged in a concert of action with defendant involving the criminal conduct, the declarant not being produced at the trial. Defendant does not here deny that the testimony in question falls under a recognized exception to the hearsay rule, but argues that admission of the testimony nevertheless deprived him of his rights under the Confrontation Clause of the Sixth Amendment, citing California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[1]

---

* The Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

1. At the trial, counsel for defendant did not expressly invoke the Confrontation Clause, but objected to the question which led to the testimony at issue on the ground that it was hearsay and leading. However, the Government does not, on this appeal, contend that the limited nature

■ The recognized exception to the hearsay rule applicable here is that, notwithstanding its hearsay character, testimony of out-of-court declarations implicating another, offered to prove the other's guilt, is admissible if there is independent evidence that at the time of the declaration, the declarant and the other person were engaged in a concert of action involving the criminal conduct in question. *See* United States v. Griffin, 434 F.2d 978, 983–984 (9th Cir. 1970); Reyes v. United States, 417 F.2d 916, 920 (9th Cir. 1969).

■■ While the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same source, the Supreme Court has never equated the two. It follows that application of a recognized hearsay rule exception does not necessarily evidence compliance with the Confrontation Clause. *See* Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The determination of whether, in a particular case, the application of a recognized exception to the hearsay rule satisfies the requirements of the Confrontation Clause, the *Dutton* opinion indicates, calls for an examination of all the circumstances of the case. The relevant factual inquiry is whether, under the circumstances, the unavailability of the declarant for cross-examination deprived the jury of a satisfactory basis for evaluating the truth of the extrajudicial declaration. *Dutton*, 400 U.S. at 89, 91 S.Ct. 210.

In the case before us, two United States Post Office Contract Stations were involved. One of these is Contract Station 8, located in a Phoenix, Arizona, drugstore. The Government's evidence indicated that on or about May 25, 1970, someone entered that station and took approximately $2,363.30 in postage stamp stock. Many of these stamps were later dumped in a Phoenix mailbox. Approximately 321 blank United States money orders were also stolen from Contract Station 8.

The second United States Post Office Contract Station involved in this case is No. 13, located in a different Phoenix, Arizona, drugstore. On or about June 25, 1970, the station was burglarized and approximately $3,204.14 worth of postage stamp stock was taken. A number of blank serialized United States money orders were also taken from Station 13, and a quantity of narcotics and a Realtone radio were taken at the same time from the drugstore in which Station 13 is located.

The Government called, as one of its witnesses, Clarence Leroy Jordan, of Nashville, Tennessee. Jordan had a prior burglary conviction and, at the time he testified, was under charges in connection with passing stolen United States money orders. Jordan testified that on June 27, 1970, he was in contact in Nashville with George Griffith, with whom Jordan was well acquainted. Jordan testified that Griffith told Jordan on this occasion that he had a shipment of United States money orders coming in from Phoenix that day about eleven o'clock.

Jordan further testified that Griffith later that day came to Jordan with one hundred twenty blank United States money orders. According to Jordan, Griffith delivered them to Jordan and he and Griffith made them out and Jordan passed them in Nashville. The Assistant United States Attorney then asked Jordan what Griffith had said to Jordan at the time of their first contact on June 27, 1970. Jordan replied:

"Mr. Griffith told me that a friend of his in Phoenix, Arizona, known as Bob Adams, was sending the shipment in a guitar case on an airline to the Nashville airport. * * * "

This is the testimony that defendant asserts was received in evidence in violation of the Confrontation Clause. Jordan was vigorously cross-examined by counsel for the defendant.

The Government produced a great deal of additional testimony from others of

of the objection warrants rejection of the Confrontation argument. We will ac-

cordingly deal with the question on the merits.

its twenty-three additional witnesses, tending to show that defendant had received the stolen postage stamps and had burglarized Contract Station 13, and that in this project, and in receiving the stolen postage stamps from Contract Station 8, defendant and Griffith had engaged in a concert of action. We summarize this evidence below.

Richard Schipp, an expert witness, testified that he examined the stolen stamps and found a fingerprint of defendant on a two-dollar book of stamps. Of the 321 blank money orders which had been stolen from Contract Station 8, three hundred and nine appeared in Nashville. A fingerprint of George Griffith was on one of these money orders.

The narcotics which had been taken from the drugstore where Station 13 is located, contained in dispenser bottles of a kind which are never given to the public, were found in the trunk of the car driven by defendant. A Realtone radio, matching the description of the one taken from that drugstore, was also found in the trunk of defendant's car when he was arrested. Defendant and Griffith were together when the arrests occurred. They had been seen together for several days prior to the arrests. When they were then asked, after the arrests, if they would consent to a search of the automobile, they conversed with each other and agreed to the search. There was testimony of telephone calls in mid-June, 1970, to and from defendant's residence in Phoenix, from and to Griffith's residence in Old Hickory, Tennessee.

A paper containing Griffith's handwriting, recording defendant's Phoenix address, was received in evidence. One witness testified that she had accompanied Griffith to the Nashville airport on June 27, 1970, where Griffith picked up a guitar. A clerk at the Air Express office at the Phoenix airport identified a shipping ticket for a guitar, which ticket showed defendant's name, and his Arizona address. A crowbar and a claw hammer were found in a black bag, which bag was similar to the one in which defendant kept his personal belongings. An expert witness testified that the striations on the back of the Station 13 safe dial were made by this claw hammer. This witness also testified that a microscopic comparison of a five-layer paint particle recovered from the black bag matched in every respect with paint from the Post Office safe.

In the light of this overwhelming and undisputed evidence of defendant's guilt[2], we do not believe Jordan's testimony, quoted above, concerning Griffith's declaration implicating defendant, can fairly be said to be "crucial," or "devastating." Nor, however Griffith's declaration is assessed, do we perceive how defendant could have measurably benefited had Griffith been available for cross-examination. We therefore conclude that, under the particular circumstances of this case, the unavailability of such cross-examination did not deprive the jury of a satisfactory basis for evaluating the truth of Griffith's declaration, testified to by Jordan.

■■ Accordingly, the admission of Jordan's testimony reporting Griffith's declaration, pursuant to a recognized exception to the hearsay rule, did not deprive defendant of his rights under the Confrontation Clause. Alternatively, we hold that the Government has proved beyond a reasonable doubt that the asserted error complained of, if held to be error, did not contribute to the verdict obtained and was therefore harmless under the rule of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.

2. Defendant produced no testimony in his own defense.