**Joe Willie CHILDS, Petitioner-Appellee,**

**v.**

**Harold J. CARDWELL, Warden, Ohio State Penitentiary, Respondent-Appellant.**

**No. 71–1103.**

United States Court of Appeals,
Sixth Circuit.

Dec. 10, 1971.

---

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellant; William J. Brown, Atty. Gen., Jeffrey L. McClelland, Asst. Atty. Gen., Columbus, Ohio, on brief.

Donald F. Kelch, Jr., Columbus, Ohio, for petitioner-appellee; Mayer, Tingley, Hurd & Emens, Columbus, Ohio, on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

Appellee, Joe Willie Childs, was convicted by a jury in the Common Pleas Court of Franklin County, Ohio, on May 14, 1964, on counts of an indictment charging him with armed robberies and assault with intent to kill. He was sentenced to consecutive terms in the Ohio state penitentiary.

One of the robberies was of the Miller Market in Columbus, Ohio, on December 17, 1963. The Miller Market was owned by Harold Johnson and operated by him and his wife, Evaline Gay Johnson. During the robbery Mr. Johnson was shot and wounded by one of the two robbers.* The bullet creased Johnson's cheek bone, fracturing it and his jaw bone in two places, and rendering him unconscious. Childs was positively identified by both Mr. and Mrs. Johnson as one of the robbers. The store was well lighted.

The other robbery took place in Simon's Market in Columbus, Ohio, two

---

* The robber who shot Johnson was not the one identified as Childs.

days later, on December 19, 1963. Two employees of the Market, Sandra Sue Sullivan and her husband, Ray Sullivan, positively identified Childs as one of the robbers. This store also was well lighted. The other robber was Robert Jarrett, who entered a plea of guilty and was sentenced to imprisonment in the Ohio state penitentiary. The state subpoenaed Jarrett from the penitentiary and he was present at the trial, but he was not called as a witness by either the state or Childs.

Detective Fred Jansen testified as to a statement made to him by Jarrett in the presence of Childs, as follows:

"A . . . I called Mr. Jarrett's attention to the night of the 19th of December and the Simon's robbery. I asked him if he was one of the two men involved in this robbery, and he said that he was; I asked him at the time could he name the second man involved with him and he said that he could and he indicated the man seated in the room with him. I asked him who that man was and he said 'Willie Joe Childs.'" (App. 119a)

Jansen further testified that Childs, at this confrontation with Jarrett, denied that he participated in the robbery.

Child's court-appointed attorney made no objection to this testimony and cross-examined Jansen.[1]

The defense was an alibi. Defendant called his mother and stepfather, who lived in the same house with him, and also three friends, two of whom lived in the same house.[2] Childs testified in his own defense. On cross-examination he admitted that he was convicted of burglary in 1959 and sentenced to the penitentiary, and that he was convicted of uttering a forged check in 1962 and again sentenced to the penitentiary.

Childs' conviction in the present case was affirmed by the Court of Appeals of Franklin County, Ohio, and by the Supreme Court of Ohio, with one Judge dissenting. The Supreme Court of the United States denied certiorari. State v. Childs, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), cert. denied, 394 U.S. 1002, 89 S.Ct. 1596, 22 L.Ed.2d 779 (1969).

Childs then filed in the United States District Court an application for a writ of habeas corpus, claiming that his constitutional rights had been violated in a delay of 121 days in the appointment of counsel for him, while he was incarcerated in jail without bond, and in the admission of hearsay evidence at the trial. These identical issues were presented to the Supreme Court of Ohio and resolved against Childs by that Court.

The District Court, 320 F.Supp. 1365, reviewing the trial record, found no prejudice to Childs in the delay in the appointment of counsel. The District Court found, however, that the testimony of Detective Jansen was hearsay, and that it deprived Childs of his right of confrontation in violation of the Confrontation Clause of the Sixth Amendment. The Court granted the writ unless the state should proceed to try Childs within sixty days.

We agree with the decisions of the Supreme Court of Ohio and the District Court with respect to the first ground, that Childs was not prejudiced by the delay in the appointment of counsel. Only the second ground requires our discussion.

In its opinion, the Supreme Court of Ohio, addressing itself to the hearsay issue said:

"The problem with this question of law is that counsel for the defendant did not object when that testimony was given, and he did nothing thereaf-

---

1. After the cross-examination the prosecutor asked Jansen on redirect examination to relate the conversation again. Defense counsel objected on the ground that it "is a matter that should have come out on direct; this is redirect, and it's just merely contradicting what he has given on cross-examination."

2. The other friend "was arrested about the same time and apparently for one of the same offenses for which defendant was indicted." State v. Childs, 14 Ohio St.2d 56 at 60, 236 N.E.2d 545 at 548.

ter to call the attention of the trial court to this alleged hearsay error. It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. Paragraph one of the syllabus of State v. Glaros, 170 Ohio St. 471 [, 166 N.E.2d 379.] We do not believe that defendant has shown adequate reasons to disregard this rule.

"Defendant asserts that his constitutional right of confrontation of the witnesses against him was denied by the admission of this hearsay. This deprivation is not peculiar to this case, as it would seem to be the obvious result of the admission of hearsay in any criminal case where the declarant was not put on the stand or otherwise subject to cross-examination. Constitutional rights may be lost as finally as any others by a failure to assert them at the proper time. State v. Davis, 1 Ohio St.2d 28 [, 203 N.E.2d 357.]

"The legitimate state interest in requiring timely objection to improper evidence has been well recognized by courts, including the United States Supreme Court. Douglas v. Alabama, 380 U.S. 415, [85 S.Ct. 1074, 13 L.Ed. 2d 934] Henry v. Mississippi, 379 U.S. 443 [, 85 S.Ct. 564, 13 L.Ed.2d 408.] This interest is founded on the desirability of avoiding unnecessary delay and discouraging defendants from making erroneous records, allowing them an option to take advantage of favorable verdicts or to avoid unfavorable ones. Unlike the case of Henry v. Mississippi, *supra*, the state interest was not served here by any motion or objection which would call the attention of the trial court to the error that is urged.

"In view of the considerations above and the additional fact that the hearsay evidence was corroborated by two eyewitnesses who testified at the trial,

we do not believe defendant has discredited the fairness of his trial or otherwise given sufficient justification for disregarding the requirement of timely objection." (14 Ohio St.2d at 61–62, 236 N.E.2d at 549)

In State v. Davis, 1 Ohio St.2d 28, 203 N.E.2d 357 (1964), Chief Justice Taft said:

"Defendant contends that Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, requires this court to reverse his conviction because those suits were erroneously admitted in evidence against him.

"However, footnote 9 to the majority opinion in *Mapp* states:

" 'As is always the case . . . , state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected.' " (*Id.* at 30, 203 N.E.2d at 359)

"In our opinion, protection of a defendant does not require giving him such a procedural advantage over the state. Cf. State v. Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379, where a defendant was not permitted to rely upon an error which counsel for the defendant could have called but did not call to the court's attention at a time when such error might have been avoided or corrected." (*Id.* at 31, 203 N.E.2d at 360)

It is apparent to us that the state has insisted on compliance with its procedural requirements.

In Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), the Court in an opinion written by Mr. Justice Brennan recognized the "familiar principle that this Court will decline to review state court judgments which rest on independent and adequate state grounds, even where those judgments also decide federal questions." The principle applies in cases involving both state substantive and procedural grounds. Also, " . . . we neither hold nor even remotely imply that the State must forgo insistence on its proce-

dural requirements if it finds no waiver." *Id.* at 452, 85 S.Ct. at 570.

Ohio certainly has an interest in requiring a litigant in its courts to object to evidence which he contends is incompetent and inadmissible in order that the trial court may have opportunity to pass thereon and correct any error. It is not fair to the trial court for issues to be raised for the first time in the appellate court. Proper practice would require defense counsel, if he desired to question the admissibility of the testimony of Detective Jansen, to have interjected an objection to it and to have moved for a mistrial. He did neither.

Adverting to the so-called hearsay testimony of Detective Jansen, it should be noted that Jansen was cross-examined on it by defense counsel. In addition, the state produced Jarrett in court and he could have been called by the defense as a witness and cross-examined as a "hostile witness." United States v. Holsey, 414 F.2d 458 (10th Cir. 1969); United States v. Ghaloub, 385 F.2d 567 (2d Cir. 1966); United States v. Duff, 332 F.2d 702 (6th Cir. 1964); Union Pac. R. R. v. Ward, 230 F.2d 287 (10th Cir. 1956); Gariepy v. United States, 189 F.2d 459 (6th Cir. 1951).

This is the rule in Ohio and is applied generally. 56 Ohio Jur.2d Witnesses § 305, p. 734; 58 Am.Jur. Witnesses § 618, p. 342; 98 C.J.S. Witnesses § 333, p. 47.

We do not hold that either the state or the defense is required to call a hostile witness to the stand, or that any inference may be drawn from their failure to do so. We merely point out that if the testimony of such a witness was essential to prove a necessary element of their case, the witness was available to them for cross-examination.

Actually there was confrontation when Childs met with Detective Jansen and Jarrett. Jarrett made the statement implicating Childs, who did not remain silent; on the contrary, he voluntarily spoke out and denied his involvement in the robbery. The State did produce Jarrett in court. Production of the witness is all that ought to be required, particularly when there is a right to cross-examine. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), concurring opinion by Mr. Justice Harlan. Dutton v. Evans, 400 U.S. 74 at 96, fn. 3, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

At the time this case was tried in the Common Pleas Court, testimony of this kind would not have been hearsay, and such testimony would have been admissible to prove an admission against interest of the defendant if he had remained silent when the statement implicating him was made. Murphy v. State, 36 Ohio St. 628 (1881). It was not until Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the prosecution may no longer "use at trial the fact that he [defendant] stood mute or claimed his privilege in the face of accusation" during police custodial interrogation. *Id.* at 468, fn. 37, 86 S.Ct. 1602, *Miranda* is not retroactively applied. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Perhaps the fact that Childs at the confrontation denied his involvement in the robbery motivated defense counsel to not object to the question or the answer and to rely on his alibi defense. Lawyers may make tactical determinations on how to try a case and adopt trial strategies; see Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

In Henry v. Mississippi, *supra* (379 U.S. 443, 85 S.Ct. 564) the Court said:

> "Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A.5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this

case." (*Id.* at 451–452, 85 S.Ct. at 569)

■ Certainly it was permissible for the state to prove that such a conversation took place. The only question is whether it was prejudicial to admit it as evidence of guilt. Here again it must be remembered that defense made no objection to its admission and gave the trial court no opportunity to correct the error which was alleged for the first time in an appellate court.

■ If Childs thought there was an improper reason for Jarrett to involve him in the robberies, he could have cross-examined Jarrett in order to bring out that fact. It should be kept in mind always that the fundamental purpose of a trial is to ascertain the truth.

We regard the testimony of Jansen as of "peripheral significance at most." Dutton v. Evans, 400 U.S. 74, 87, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970).

The District Court, in granting the writ, relied principally on Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The state court which tried Childs in 1964 did not have the benefit of these decisions, and we doubt that it could have foreseen the drastic changes in criminal and constitutional law which were made by federal courts in the years which followed.

In our opinion, both *Pointer* and *Bruton* may be distinguished from the present case. The Supreme Court in *Dutton* did distinguish *Pointer*, as follows:

"In the *Pointer* case it appeared that a man named Phillips had been the victim of a robbery in Texas. At a preliminary hearing, Phillips 'as chief witness for the State gave his version of the alleged robbery in detail, identifying petitioner as the man who had robbed him at gunpoint.' 380 U.S., at 401 [, 85 S.Ct. 1065.] Pointer had no lawyer at this hearing and did not try to cross-examine Phillips. At Pointer's subsequent trial the prosecution was permitted to introduce the transcript of Phillips' testimony given at the preliminary hearing. Thus, as this Court held, the State's 'use of the transcript of that statement at the trial denied petitioner any opportunity to have the benefit of counsel's cross-examination of the principal witness against him.' 380 U.S., at 403 [, 85 S.Ct. 1065.]" (400 U.S., at 84, 91 S.Ct. at 217)

In the present case, Childs had counsel who made no objection to the testimony. Further, *Pointer* involved an entire transcript of testimony of the witness at the preliminary hearing. That witness testified extensively and was not cross-examined by defendant, who did not have counsel. In our case the testimony consisted of only a few lines, and defendant was represented by competent counsel.

In *Bruton*, a postal inspector testified in a joint trial involving Bruton and his co-defendant Evans, that Evans had confessed to the armed postal robbery and implicated Bruton as his accomplice. The alleged confession took place in the absence of Bruton. The District Court held that the confession was admissible only against Evans, and instructed the jury to disregard the testimony against Bruton. The Supreme Court held that Bruton had been denied his right of confrontation and that the instruction did not wipe out the error. It should be noted that the Court of Appeals held that the Evans confession was also inadmissible in violation of the rule in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Since Evans was a defendant, he could not have been compelled by either the Government or Bruton to testify. Hence the postal inspector's testimony could not be refuted. In our case Jarrett had already been convicted and was serving his sentence. He could have been called by Childs and cross-examined as a hostile witness.

Childs was positively identified by the four eye witnesses who were the victims of the two robberies. The State did not need the hearsay evidence as there was

substantial evidence without it to sustain the conviction. The evidence of guilt was overwhelming. Childs was not helped by his attempt to establish a phony alibi. His witnesses did not stand up on cross-examination.

In our opinion, the error complained of was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Clayton, 418 F.2d 1274 (6th Cir. 1969).

It should be observed that the confrontation issue applied only to the count charging the December 19, 1967 robbery, and not to the count charging the robbery on December 17, 1967. In our opinion, the judgment in the case involving the December 17th robbery was not affected.

We close with the admonition contained in the plurality opinion in *Dutton*, which we think is appropriately stated here:

"Almost 40 years ago, in Snyder v. Massachusetts, 291 U.S. 97, [54 S.Ct. 330, 78 L.Ed. 674,] Mr. Justice Cardozo wrote an opinion for this Court refusing to set aside a state criminal conviction because of the claimed denial of the right of confrontation. The closing words of that opinion are worth repeating here:

" 'There is danger that the criminal law will be brought into contempt— that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.' 291 U.S., at 122 [, 54 S.Ct. 330.]" (400 U.S., at 89–90, 91 S.Ct., at 220)

The judgment of the District Court will be reversed and the cause remanded with instructions to deny the application for a writ of habeas corpus.