**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank Hinsley NUNEZ, Defendant-Appellant.**

**No. 73-1252.**

United States Court of Appeals, Ninth Circuit.

Aug. 3, 1973.

Certiorari Denied Dec. 3, 1973.

See 94 S.Ct. 594.

---

Oscar B. Goodman (argued), of Goodman & Snyder, Las Vegas, Nev., for defendant-appellant.

Alice A. Wright, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before HAMLIN and CARTER, Circuit Judges, and BOLDT, District Judge.*

## OPINION

JAMES M. CARTER, Circuit Judge:

Appellant Frank Hinsley Nunez was charged and convicted in Count 1 of conspiring between December 1, 1971, and February 22, 1972, to import marijuana from Mexico to the United States in violation of 21 U.S.C. §§ 960(a) and (b), and 952(a). In Counts 2, 4, 6 and 8 he was charged with and convicted of importing marijuana into the United States in violation of the same sections. In Counts 3, 5, 7 and 9 he was charged with and convicted of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b).

He was sentenced on Count 1 to five years, and on each of the substantive counts to five years, to run concurrently with each other but consecutive to the sentence on Count 1.

Eight other defendants were named in the indictment as co-conspirators: Michael Robert Clark, Roy George Emerzian, Jr., Michael John Hindman, Gerald Marshall Jewell, Richard Lee Morgan, Roger Lee Mason, Steve Michael Rutledge and Charles Leon Gray. Various of these parties were named as co-defendants in the substantive counts. Only Nunez was tried. There were no objections to the instructions of the trial court. Nunez appeals from the convictions.

Emerzian testified at the trial. He entered a plea of guilty to one count in the indictment. He was sentenced under the Youth Corrections Act and placed on probation. Rutledge testified at the trial. He was an addict and entered a guilty plea to one of the charges. He was sentenced under the Youth Corrections Act and placed on probation. Mason testified at the trial. He was arrested on a charge of parole violation growing out of a state robbery charge. His parole was revoked in March 1972. He was incarcerated in a California institution at the time of his testimony. The charges against him in the present case were dismissed.

Morgan pled guilty to two counts in the indictment. He was sentenced to concurrent terms of five years. Clark pled guilty to the conspiracy count. He was sentenced under the Youth Corrections Act and placed on probation. Hindman pled guilty to one count and was sentenced to a term of three years. Jewell pled guilty to one count and was sentenced to custody under the Youth Corrections Act. Gray pled guilty to one count and was given a split sentence of four years, with probation granted on condition that six months be served in a jail-type institution.

Nunez raises two contentions:

(1) Whether the trial court erred in admitting evidence of prior similar acts occurring before the period of the conspiracy specified in the indictment; and

(2) Whether the trial court erred in admitting statements by co-conspirators, implicating Nunez, where independent evidence implicating him was also introduced into evidence.

We affirm.

### I.

#### Prior Similar Acts

 The trial court admitted evidence of four different series of events on the ground that they constituted prior similar acts bearing on the issues of plan, state of mind, intent, and lack of innocent purpose. The law is clear that such similar acts are admissible. United States v. Jiminez-Robles (9 Cir. 1969) 415 F.2d 308; United States v. Rodriguez (9 Cir. 1972) 459 F.2d 983, cert. denied, 409 U.S. 865, 93 S.Ct. 158,

---

* Honorable George H. Boldt, Senior United States District Judge, Western District of Washington, sitting by designation.

34 L.Ed.2d 113; United States v. Hasley (9 Cir. 1972) 465 F.2d 968.

Here the conspiracy and the substantive counts involved charges of smuggling large amounts of marijuana from Mexico into the United States by airplanes and thereafter moving the marijuana in automobiles. The seats were generally removed from the plane in order to carry a large load of marijuana. The four sets of acts detailed below were sufficiently recent and similar in character as to be admissible under the general rule above.

(1) Emerzian testified that on February 28, 1971, prior to the conspiracy alleged in the indictment, Nunez and his wife came to Morgan's home in Fresno, California, where Emerzian was present. This was just prior to a trip to Phoenix, Arizona, to spend the night and then go on to Mexico. The four of them, Emerzian, Morgan, Nunez and his wife, went to the airport at Chandler Field in Fresno in a station wagon. Morgan and Emerzian unbolted seats from an airplane in the presence of Nunez and his wife. The seats were placed in the station wagon. Nunez' wife left with the seats in the station wagon and Nunez, Morgan and Emerzian left in the airplane for Phoenix, stayed there two nights, then flew to a dirt strip near Culiacan, Mexico, to pick up marijuana. Emerzian, Morgan and Nunez were present when the marijuana was loaded into the plane.

Nunez stayed in Mexico and Morgan and Emerzian flew to Palm Springs, California, and on to Palo Alto, California, where the marijuana was unloaded into a van after a phone call by Morgan.

(2) Three days later, Morgan and Emerzian flew back to Culiacan, Mexico, for another load of marijuana and met Nunez. A large amount of money was handed from Morgan to Nunez and from Nunez to the "people down there."

The next day, Frank [Nunez] left to go back to the United States, probably by bus. Morgan and Emerzian flew back to Palm Springs, California, with the marijuana and transported it to Watsonville, California.

(3) Rutledge, another co-conspirator, testified that about Thanksgiving in 1971, he went with John Plemons to Los Angeles, where they picked up Nunez. He was introduced to Nunez by Plemons and they drove back to a house near Tarzana, California. Nunez and Plemons loaded the trunk of the car with 20 sugar sacks containing numerous kilos of marijuana. They returned to the motel where they had picked up Nunez and several of the kilos were opened in the presence of Nunez to make sure it was marijuana. Plemons and Rutledge then drove back to Fresno and on to San Francisco with the marijuana.

(4) An airplane was seized on April 6, 1971, along with 900 pounds of marijuana. Richard Morgan was arrested. A note was found in the plane (Ex. 140) in Nunez' handwriting, reading:

"Rich;

You are going to land at a different strip. I'm still here where they're packing, but I'll be there when you land. The guy with the yellow shirt will fly back with you to show you the place to land.

P.S. Don't worry, everythings O.K.

Frank."

## II.

### The Conspiracy and the Substantive Counts

We relate in summary form the evidence as to Counts 2 through 7, and the facts concerning the dumping of a load of marijuana at Thermal, California. Apparently this incident was not the subject of a count in the indictment, but was a part of the conspiracy.

Concurrent sentences were imposed on Nunez on all substantive counts. Under the concurrent sentence doctrine of Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L. Ed. 1774 (1943), and Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969), we do not review the

sufficiency of the evidence as to Counts 2, 3, 8 and 9.

(a) *The Marijuana Dump at Thermal*

Mason, a pilot, testified he lived in Kerman, California, near Fresno. He met Morgan in Fresno some months before the date of his testimony. Morgan asked him if he would be interested in smuggling marijuana. Morgan was to set up the plan, and find an airplane and a road or alfalfa field to land in. He was to pay Mason $10,000 a trip. In December 1971, Morgan gave him the money to rent a plane in Lompoc, California. Mason then met Emerzian through Morgan. Mason and Emerzian flew the plane to Culiacan, Mexico. Emerzian had been there before and showed Mason the landing strip. They loaded it with marijuana and flew back to the United States. Because of trouble with the plane, they landed at Thermal, California, in the Imperial Valley. There they dumped the marijuana and the empty gasoline cans in a pile on the side of the runway.

Emerizan called Morgan. As a result of the call, Rutledge and one Richard Dillon came down from Fresno in a red Chevrolet pickup and met Mason. They had to abandon the marijuana.

Mason and Rutledge flew back to Kerman. Emerzian and Dillon drove back to Fresno in the red Chevrolet pickup.

On his return, Mason talked to Morgan, who told him that the load was half paid for; that there would be no more trips until Frank [Nunez] found out for sure that the police or the authorities had picked up the marijuana load; that he [Nunez] had evidently thought they were trying to steal the load.

Mason took Rutledge back to Morgan's apartment in Fresno. Morgan repeated the same statement and also said Frank [Nunez] was upset about losing the load.

Rutledge, a co-conspirator, testified that he was introduced to Morgan by John Plemons about December 1, 1971. Morgan told him how the smuggling op-

eration would be conducted. He was to assist in the take-off, take the seats out of the plane, and upon returning from Mexico, unload the airplane and drive by car from 50 to 70 miles and then meet someone.

Rutledge went with Plemons and Morgan to buy a truck. Morgan, under the assumed name of John Fletcher, bought a red Chevrolet pickup with a white camper on it.

Rutledge helped Emerzian and Mason with the smuggling trip which resulted in dumping the load of marijuana at Thermal.

Emerzian, another co-conspirator, testified about his smuggling activities after the beginning of the conspiracy on December 1, 1971. Before December 9, 1971, Morgan asked him to take a pilot down to Mexico. The pilot, he later learned, was Mason.

Emerzian and Mason flew from Kerman, California, to Culiacan, Mexico, and back. Emerzian confirmed Mason's testimony about the trip and the dumping of the marijuana at Thermal.

(b) *Counts 2 and 3*

Count 2 charged Nunez, Mason and Morgan with smuggling marijuana on or about December 18, 1971. Count 3 charged Nunez, Mason, Morgan, Jewell and Rutledge with possessing marijuana with intent to distribute on the same date.

Mason testified that Morgan contacted him again about mid-December 1971. Morgan said everything was fine; that Frank [Nunez] had a friend in Palm Springs; that the authorities did pick up the load at Thermal and that "we were ready to go again."

Shortly before Christmas 1971, Morgan and Mason picked up a plane at Whitman Field in the San Fernando Valley, and flew to Casa Grande, Arizona.

On December 19, 1971, Morgan rented Room 5 at the Western Sundown Motel. Rutledge had already checked into Room 16 at the motel on December 17, 1971,

under the name of Steve Martin. Rutledge picked them up at the airport in a yellow Ford pickup. Morgan stated that Frank [Nunez] owned the pickup.

Morgan, Rutledge and Mason flew the plane and sought out a place to land it south of Casa Grande. Later they drove out in the pickup and selected a place where the plane could land on its return from Mexico.

The following morning, Morgan and Rutledge dropped Mason off at Three Point Airport in Casa Grande, Arizona, and Mason took off for Mexico. The seats in the plane had been removed.

Mason picked up a load of marijuana in Mexico and flew back to the place selected near Casa Grande. Rutledge drove up in the yellow Ford pickup and the marijuana was loaded into it.

Jewell, another co-conspirator, was registered in Room 407 at the Francisco Grande Hotel in Casa Grande on December 18 and 19, 1971. He drove up in a red Chevrolet pickup with California plates—the same one that Rutledge and Dillon had driven down to Thermal. The marijuana was transferred to the red Chevrolet pickup from the yellow Ford pickup. Jewell was supposed to drive the load back to Fresno.

Rutledge testified that about December 20, 1971, he met with Morgan. Morgan told him that "he had to do two loads, arrange two loads for Frank [Nunez] and then the third load he would receive the entire proceeds from, would be actually like his load of marijuana and he would make all the money on it."

Morgan gave Rutledge the keys to the yellow Ford truck and told him to drive it to Casa Grande, Arizona. He registered into Room 16 at the Western Sundown Motel on December 17, 1971, under the name of Steve Martin.

Two days later, on December 19, Morgan and Mason arrived and checked into Room 5 of the Sundown Motel. The three of them flew around in a plane looking for a landing strip, then drove the yellow Ford pickup out to look the area over.

Morgan later returned to Fresno. Rutledge helped Mason take off in the plane. Mason left for Mexico at 4:30 a. m., and Rutledge was to meet him on his return about 6:00 p. m.

On Mason's return they unloaded the marijuana from the plane into the yellow Ford pickup and parked it in from of the room at the Sundown Motel. He received a call from Jewell, who arrived in the red Chevrolet pickup. Rutledge, Mason and Jewell drove the two pickups to an uncompleted housing development across the street from the Casa Grande airport, and transferred the marijuana from the yellow Ford to the red Chevrolet.

### (c) *Counts 4 and 5*

Count 4 charged Clark, Morgan and Nunez with importing marijuana about January 1, 1972, and Count 5 charged Clark, Morgan, Nunez, Rutledge and Jewell with possession of marijuana with intent to distribute, on the same date.

Rutledge testified that he was instructed by Morgan to fly to Phoenix and that he was met at the airport by Morgan and Clark. The following day he helped Clark take off from the Casa Grande airstrip for a flight to Mexico, and helped unload the marijuana from the plane upon Clark's return. Rutledge and Clark returned to the Doubletree Inn at Scottsdale, where they were staying, and Morgan and Jewell were awaiting them.

Rutledge testified that Morgan made a phone call from a room in the Doubletree Inn "to Frank [Nunez] and he just told him everything went okey." The marijuana was then moved to and unloaded at the 62nd Street house in Scottsdale.

Richard Morgan, under the name of Richard Martin, registered at the Doubletree Inn at Scottsdale, Arizona, in Room 206, on December 29, 1971, and stayed through January 4, 1972. The registration was for two people. Probably a third person occupied the room,

since the hotel bill showed an additional room charge of $3.00.

The records of the Doubletree Inn show a long distance call on January 2, 1972, from Room 206 by a Richard Martin to Nunez' number in Fresno. As shown in Appendix II, there were numerous phone calls from December 29 to January 4 from the Doubletree Inn, where Rutledge, Morgan and Clark were staying, to Nunez' phone number in Fresno. Most of the calls were collect and accepted at Nunez' number in Fresno.

### (d) *Counts 6 and 7*

Count 6 charged Nunez, Morgan and Hindman with importing marijuana on January 7, 1972. Count 7 charged Nunez, Morgan, Hindman, Jewell and Gray with possessing marijuana with intent to distribute, on the same date.

Mason testified that he and Morgan prepared for another trip in early January, but it was called off by a call from Morgan when Mason arrived at Palm Springs. The seats had been taken out of the plane.

Morgan told Mason:

> "Frank had lost an airplane and a couple of vehicles and a stash house. He was out a lot of money because of bail and so forth, and we wouldn't do anything for a while."

On January 4, 1972, Hindman registered into Room 256 at the Sun Dancer Hotel in Phoenix and stayed two nights. On January 6, 1972, he registered into Room 307 at the Casa Grande Motel in Casa Grande, and stayed through January 6 or 7, 1972. Hindman was the pilot for the load of marijuana.

From January 4 to 8, 1972, various law enforcement agencies conducted a surveillance of the yellow Ford pickup, the red Chevrolet pickup, a Buick Riviera and the stash house at 12820 N. 62nd Street in Scottsdale, Arizona, eventually resulting in the arrests of co-conspirators Gray, Hindman, Jewell and Clark.

The officers also kept under observation the Holiday Inn and Doubletree Inn in Scottsdale; the Casa Grande Motel, and Francisco Grande Hotel and airport, in Casa Grande; Falcon Field, an airport at Mesa, Arizona; and a Cessna airplane, No. N3969G, which was located at Falcon Field. The yellow Ford pickup was followed and observed at various places—at Falcon Field, at the house on 62nd Street, at the Holiday Inn, and elsewhere. Also, the Buick Riviera was followed and observed in various places, including the house on 62nd Street.

On January 4, 1972, Rutledge and Clark were observed at Falcon Field in the yellow Ford pickup. They flew off in the Cessna plane, No. N3969G. On January 5, 1972, they moved out of the Doubletree Inn and went to the stash house on 62nd Street. Rutledge had been staying in Room 178 at the Holiday Inn. On January 6, Hindman flew the Cessna plane from Falcon Field to the Francisco Grande Airport. Jewell arrived with the yellow Ford pickup in the parking lot at the Francisco Grande Hotel.

On January 7, the Cessna plane took off with apparently Hindman piloting it, since he was missing from his room. The plane returned that evening and landed at Eloy Airport near Casa Grande. Hindman was seen going into the Francisco Grande Hotel.

On January 7, the yellow Ford pickup left the 62nd Street house. The Ford pickup was stopped and the driver Gray arrested. The pickup contained green garbage bags containing 774 pounds of marijuana in kilo bricks. On the same day the airplane was seized and marijuana debris taken from it.

Hindman was arrested in his room. Jewell was also arrested. A search warrant was secured for the stash house on 62nd Street, and was served at 5:00 a. m. on January 8, 1972. Marijuana was found in the house. The Buick Riviera and the red Chevrolet pickup were seized.

*Discussion*

### 1. Sufficiency of the Evidence as to the Conspiracy

■ From the foregoing it is clear that the conspiracy existed as alleged in Count 1 of the indictment, involving Mason, Morgan, Jewell, Rutledge, Clark, Hindman, Gray and Emerzian. The only real question is whether Nunez was connected to the conspiracy.

■ "Once the existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it." United States v. Knight (9 Cir. 1969) 416 F.2d 1181, 1184 (quoting); Fox v. United States (9 Cir. 1967) 381 F.2d 125, 129; Diaz-Rosendo v. United States (9 Cir. 1966) 357 F.2d 124, 130, cert. den., 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83; United States v. Iacovetti (5 Cir. 1972) 466 F.2d 1147, 1154, cert. den. (1973), 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270.

Certain facts and events definitely connect Nunez with the conspiracy.

### The Yellow Ford Pickup

On November 19, 1971, Cram, a salesman at Quality Car Company in Phoenix, sold a 1969 yellow Ford pickup to a "Frank Martin" for $3,300, which Martin paid for with thirty-three $100 bills. The sales document was Exhibit 3. There were received in evidence applications for driver's licenses: Exhibit 100, application by Frank Nunez; Exhibit 101, application by Frank Martin; each with a signature and a thumbprint. The signatures on the two driver's licenses, Exhibits 100 and 101, and Exhibit 3, the bill of sale, were the same.

Exhibit 106 was a thumbprint of Nunez taken during the trial. The thumbprints from Exhibits 100, 101 and 106 were identical. Clearly, Nunez owned the yellow Ford pickup.

The prior acts and events invloving Nunez could be considered by the jury as to Nunez' intent in the use of the Ford pickup.

The jury could infer that the use of the Ford by the co-conspirators was with Nunez' consent, and that his intent was to further the smuggling venture.

### The Buick Riviera

The Buick Riviera was observed on various occasions during surveillance of the co-conspirators. It was seized at the 62nd Street house. In it was the pink slip for the car, Exhibit 45, which showed registration to Flores Frank Garcia, 1622 North Delmar, Fresno, California, and legal ownership in P. J. Eads, 3655 East Tulare Street, Fresno, California.

The facts about the Buick Riviera were as follows:

Joe Garcia Perez identified Exhibit 45 as the pink slip to a 1967 Buick Riviera. He had purchased the vehicle from P. J. Eads. He put the car in the name of his brother, Frank Garcia Flores [sic], but Garcia Perez continued to drive the car. He then talked to Nunez and wanted to sell the car. Nunez said he could get a buyer. Garcia Perez secured the pink slip from his brother, had his brother sign it over, and gave it and the car to Nunez. Later, Nunez gave him $1,500 or $1,600 and indicated he had sold the car in Garcia Perez' behalf.

Thus when the pink slip was found at the time of the seizure of the Buick Riviera, it was apparent that Nunez had never transferred the ownership of the car, but had retained it for himself.

There was further confirmation of this fact by the finding in the Buick Riviera of a hotel bill (Ex. 44) from the Hyatt House Hotel in Palo Alto, California. Nunez registered into the hotel on December 12, 1971, under the name of Frank Nunez, with an address at 4475 N. Chestnut, Fresno, California. Nunez lived at this address. Also, the Buick Riviera was seen in August 1971 in front of Nunez' home at the above address. On another occasion, Nunez was observed driving the Buick Riviera.

The prior acts and events involving Nunez also bear on the problem of the Buick Riviera. The jury could infer his intent to allow the other co-conspirators

to use the Buick Riviera in the smuggling venture.

### The Posting of Bail by Nunez

After the seizure of the cars, the search of the 62nd Street house and the arrest of various of the defendants, Nunez made bail for Hindman, Jewell and Gray.

The facts show that Mrs. Hindman called Awbrey, a bail bondsman, and gave him a number to call in Fresno. Nunez lived in Fresno. On his call Awbrey reached a babysitter. The babysitter advised Awbrey where Nunez could be reached. The jury could infer that the babysitter was in Nunez' home in Fresno.

Awbrey reached Nunez by phone and later met him and arranged for bail. Awbrey quoted Nunez as saying he had never seen nor met Hindman, Jewell or Gray and didn't know any of them. Nevertheless, he posted bail for the three co-conspirators, paid Awbrey $1,600 for the bail bond, and pledged his clothing store, furniture and fixtures, worth $32,000, as security for the bond. From this the jury could reasonably infer that Nunez, in bailing out the three co-conspirators, was acting in furtherance of the conspiracy.

The prior act and events involving Nunez have a bearing on Nunez' intent in posting bail. The jury could infer he did so to further the smuggling venture and not for some humanitarian motive for men he did not know.

### Nunez' Arrest

Nunez was arrested on May 11, 1972, in Madera, California. He was in company with Richard Lee Morgan, one of the co-conspirators, while Morgan was under surveillance prior to being arrested.

### The Phone Calls

Many phone calls on or near the dates of Counts 2 through 7 were introduced into evidence by the telephone bills of Nunez and various co-defendants, and from the bills for the phone in the stash house on 62nd Street.

They fall into several categories: (1) Calls to and from Nunez' phone in Fresno. We set forth these calls in Appendix I. (2) Calls to the phone number of a Manuel Nunez in Redwood City, from the phones of Nunez and other co-defendants. (3) Calls from the phones of Nunez and other co-defendants to the phone number of the Monterey Fairground Travelodge. It is apparent that the phone number of Manuel Nunez and the Travelodge were important cogs in the communication system of Nunez and his co-defendants. (4) Calls between the phone numbers of various of the co-defendants. We set forth in Appendix II the calls in categories 2, 3 and 4.

These phone calls, and particularly those to and from the Nunez phone in Fresno, were devastating as to Nunez. The pattern of the calls could not have been a coincidence or unrelated to the conspiracy. They picture Nunez as "Mister Big," the leader and brains of the conspiracy.

Viewing the evidence in a light most favorable to the Government, as we must, we hold the evidence was sufficient to support the conviction of Nunez on the conspiracy count.

### 2. Sufficiency of the Evidence as to the Substantive Counts

As to Counts 4 and 5, the yellow Ford pickup figured prominently in the transaction. The Ford belonged to Nunez, under an assumed name, Frank Martin, under which assumed name Nunez also had a driver's license. Rutledge picked up Mason and Morgan at the airport in Casa Grande, Arizona, in the Ford. The Ford was used to survey a place to land when the plane returned from Mexico with the load of marijuana. The Buick Riviera was used by various co-conspirators.

When Mason flew back to the strip, the marijuana was loaded into the Ford and then transferred to the red Chevrolet.

Morgan made a phone call from Rutledge's room in the Doubletree Inn to

"Frank [Nunez] and he just told him everything went okey."

As to Counts 6 and 7, the surveillance leading up to the seizure of the yellow Ford pickup with a load of 774 pounds of marijuana, covered the yellow Ford pickup belonging to Nunez, and the Buick Riviera, which the jury could infer belonged to him. The Buick Riviera was previously seen in front of Nunez' house and Nunez had been seen driving it. The pink slip was found in the Buick Riviera. It was apparent the car had never been registered after Nunez received the car and the pink slip from Perez and paid him $1,500 or $1,600.

We hold there was sufficient evidence to sustain the conviction of Nunez on Counts 4 and 5 and on Counts 6 and 7. The jury was properly instructed that to find a defendant guilty, it need only be shown that as an aider and abettor he associated himself with the venture and did some act to make the venture succeed. Thus the jury could find that Nunez acted as an aider and abettor in the transactions in Counts 4 and 5, and 6 and 7.

In addition, the phone calls discussed, *supra*, tie Nunez into the transactions in Counts 4 and 5, and Counts 6 and 7. The jury could infer that although Nunez was not present, he was masterminding the transaction.

### 3. *Other Contentions*

Nunez complains of the admission into evidence against him of statements by co-conspirators referring to Frank [Nunez]. He contends: (1) there was insufficient "independent evidence that at the time of the declaration, the declarant and the other person were engaged in a concert of action involving the claimed conduct in question," citing United States v. Adams (9 Cir. 1971) 446 F.2d 681, 683, cert. den. 404 U.S. 943, 92 S. Ct. 294, 30 L.Ed.2d 257; and (2) that the admission of the evidence of Mason, Rutledge and Emerzian reporting Morgan's declarations violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

As we have shown above, there was clear evidence that Morgan, the declarant, quoted by the other co-conspirators, and Nunez were a part of the conspiracy.

▐ Where, as here, the admission of the evidence complained of comes within an exception to the hearsay rule concerning statements of co-conspirators, this court has rejected attacks based on the Confrontation Clause of the Sixth Amendment. United States v. Griffin (9 Cir. 1970), 434 F.2d 978, 984, cert. den., sub nom. Andrews v. United States, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971); and United States v. Adams, *supra*, 446 F.2d at 683. In Adams, as in our case, there was ample other evidence pointing to the guilt of the defendant. Nunez was not prejudiced by lack of confrontation. United States v. Sidman (9 Cir. 1972) 470 F.2d 1158, cert. den., 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973), is not in point. There the conspiracy had ended and the hearsay statement did not come within the exception to the hearsay rule pertaining to federal conspiracy trials. *Id.*, 470 F.2d at 1171.

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is not controlling since there the extrajudicial statement was a confession of a declarant implicating the defendant. United States v. Ellsworth (9 Cir., 1973), 481 F.2d 864, at 871. The statement in *Bruton* was *not one in furtherance* of a conspiracy or a common scheme within the recognized exception to the hearsay rule. *See* Dutton v. Evans, 400 U.S. 74, 85–86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). It was not the intent of *Bruton* to nullify the co-conspirator exceptions to the hearsay rule. United States v. Projansky (2 Cir. 1972) 465 F.2d 123, 137–8, cert. den., 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299.

Nor does *Dutton, supra,* control. There the Court considered a state statute and declined to rule on the hearsay

exception embodied in federal law concerning conspiracies. *Id.* 400 U.S. at 82–83, 91 S.Ct. 210. The Court stated:

"For this Court has never indicated that the limited contours of the hearsay exception in federal conspiracy trials are required by the Sixth Amendment's Confrontation Clause." *Id.* at 82, 91 S.Ct. at 216.

Most of the items of testimony complained of, containing declarations by Morgan, were clearly evidence in furtherance of the conspiracy. The only vice in some of them was the reference to "Frank." For example, Morgan's statement to Mason that the load was half paid for and there would be no more trips until it was certain the police or the authorities had picked up the marijuana that had been dumped at Thermal, was to that extent a statement of fact and not subject to objection. The statement that Frank had a friend in Palm Springs and that the authorities did pick up the load at Thermal and that "We were ready to go again," is a statement of fact and not a recital of something said by another co-conspirator. Morgan's statement about the three loads, apart from the reference to Frank, that the third load was Morgan's and he would receive the entire proceeds from it, was not otherwise subject to objection. Morgan's phone call from Rutledge's room at the Doubletree Inn, in which he called Frank by name and told him everything went okey, was a matter within the observation of the witness and in no wise subject to objection. Likewise, the statement that Frank had lost an airplane, a vehicle, a stash house and a lot of money, was a statement of facts which bore upon the conspiracy and not a recital of anything that Frank had said.

In view of the overwhelming evidence tying Nunez into the conspiracy, we cannot say that the testimony referring to acts or statements of Nunez was prejudicial. If there was error, it was harmless.

The judgments of conviction are affirmed.

## APPENDIX I

### *Calls to and from Nunez' home*

The following charts the calls by various dates to or from the phone number of *Nunez* (Fresno 291–5125), to or from the phone numbers of other co-defendants, and to the phone number of *Manuel Nunez* and the *Monterey Fairground Travelodge.*

12/16/71—291–5125 (*Nunez*) Fresno to 368–2446 (*Manuel Nunez*) (Redwood City)

12/18/71—291–5125 (*Nunez*) 〃 〃 〃 〃 〃

12/18/71—291–5125 (*Nunez*) 〃 〃 〃 〃 〃

12/18/71—291–5125 (*Nunez*) accepted a collect call from a public phone in Redwood City (*Manuel Nunez?*)

12/20/71—291–5125 (*Nunez*) Fresno to 368–2446 (*Manuel Nunez*) (7:17 p.m.) (Redwood City)

12/20/71—291–5125 (*Nunez*) Fresno to 846–9427 (*Mason*) (7:55 p.m.) (Kerman)

12/20/71—291–5125 (*Nunez*) Fresno to 368–2446 (*Manuel Nunez*) (7:57 p.m.) (Redwood City)

12/29/71—947–5411 Doubletree Inn (*Morgan, Clark* and *Rutledge* staying at Inn) ; collect call to 291–5125 (Fresno) (*Nunez*)

12/30/71—three similar collect calls to (*Nunez*)

12/31/71—a similar collect call to (*Nunez*)

Appendix I Continued on Following Page

APPENDIX I (Continued)

*Calls to and from Nunez' home* (Continued)

12/30/71—948–6691 (stash house) to 291–5125 (Fresno) (*Nunez*)

12/31/71—from public telephone in Eloy, Arizona—collect call to 291–5125 (Fresno) (*Nunez*)

1/1/72—three more collect calls from Doubletree Inn to (*Nunez*)

(Approximate date of load)

1/2/72—947–5411 Doubletree Inn (Room 206; *Frank Morgan* registered as *Frank Martin*)—call to 291–5125 (Fresno) (*Nunez*)

1/2/72—291–5125 (*Nunez*) to 948–6691—stash house, Scottsdale

1/2/72—three more collect calls from Doubletree Inn (947–5411) to 291–5125 (Fresno) (*Nunez*)

1/2/72—two collect calls to 947–5411 (Doubletree Inn) from Fresno numbers and charged to 291–5125 (*Nunez*)

1/2/72—call from phone in Fresno to stash house, Scottsdale (948–6691) and charged to 291–5125 (*Nunez*)

1/3/72—collect call from Doubletree Inn (*Morgan, Clark, Rutledge* at Inn) and charged to 291–5125 (*Nunez*)

1/3/72—291–5125 (*Nunez*) Fresno—two calls to 363–2446 (Redwood City) (*Manuel Nunez*)

1/4/72—Sun Dancer Hotel, Phoenix—(*Hindman*, Room 256) to Fresno 291–5125) (*Nunez*)

1/5/72—two similar calls to Fresno 291–5125 (*Nunez*)

1/4/72—367–5935 (*Hindman*) to Fresno 291–5125 (*Nunez*)

1/5/72—948–6691 (stash house) to Fresno 291–5125 (*Nunez*)

1/7/72—948–6691 (stash house) to Fresno 291–5125 (*Nunez*)

(Date of arrests)

1/6/72—291–5125 (*Nunez*) Fresno to *Monterey Fairground Travelodge*

1/7/72—a similar call

1/8/72—call from phone in Sweet Home exchange, Lebanon, Oregon (*Hindman*) to Fresno 291–5125 (*Nunez*)

1/12, 13, 14 and 15—four calls from 291–5125 (*Nunez*) Fresno to the *Monterey Fairground Travelodge*

1/14/72—367–5935 (*Hindman*) to Fresno 291–5125 (*Nunez*)

———————

APPENDIX II

*Other phone calls*

There were three situations that need explanation to better understand the phone calls.

(1) *Manuel Nunez* lived in Redwood City with phone number 368–2446. We cannot find in the record whether or not he was identified as a relative of appellant Nunez or otherwise. However, regardless of his identity, there is a series of calls to Manuel Nunez' number from Frank Nunez' phone number; and calls from phone numbers linked to the following co-defendants to Manuel Nunez' number: Jewell, Steve Rutledge (Steve Martin), Emerzian, Morgan and Mason. The only reasonable inference is that Manuel Nunez or his phone number was a cog in the communication system between Frank Nunez and his co-defendants.

(2) *Richard Martin (Morgan)*. Rutledge testified he was met at the Phoenix Airport by Morgan and Clark. When Clark returned from Mexico with his load of marijuana, Rutledge testified that he and Clark returned to the Doubletree Inn at Scottsdale, where they were staying. Morgan and Jewell were waiting for them.

There is a registration on December 29, 1971, under the name of Richard Martin for Room 206 in the Doubletree Inn in Scottsdale, Arizona, for two persons. Possibly a third person stayed in the room. Rutledge testified further that Morgan made a phone call to "Frank" [Nunez] from the room in the Doubletree Inn. On January 2, a long distance call was made from "Martin" in Room 206 to Nunez' number in Fresno (291–5125) and other calls were made from the Doubletree Inn, where Morgan, Rutledge and Clark were staying, to Nunez' number in Fresno, both before and after January 2, 1972.

Calls from Room 206 were made by co-defendants Rutledge (Steve Martin) and Clark. Collect calls were accepted by Room 206 from Jewell and Richard Martin and from a pay phone in Casa Grande. It is clear that Richard Martin was Richard Morgan, one of the principal co-defendants.

(3) *Monterey Fairground Travelodge*. Calls were made from Nunez' number in Fresno (291–5125) to the phone number of the Lodge (373–3381) and from the following co-defendants' phone numbers to the Lodge:

*Hindman*. There was a call on January 4, 1972, from Room 256 in the Sun Dancer Motor Hotel in Phoenix where Hindman was staying to the Monterey Fairground Travelodge (373–3381), and a call the same day to Nunez' number in Fresno (291–5125). On January 5, there were two calls to the Monterey Lodge (373–3381), and two calls to Nunez' phone in Fresno (291–5125). Hindman moved to Room 307 at the Francisco Grande Hotel in Casa Grande, Arizona. On January 6 and 7, calls to Monte-

rey Fairground Travelodge (373–3381) were charged to Room 307. There were calls from Hindman's phone (Sweet Home exchange, Lebanon, Oregon) (367–5935) to the Monterey Fairground Travelodge (373–3381) on February 2, 1972.

*Nunez*. On January 6 and 7, 1972, the same date of the calls from Hindman's room in the Francisco Grande Hotel to Nunez' number in Fresno, calls were made from defendant's number in Fresno (291–5125) to the Lodge (373–3381). Calls were made on January 12, 13 and 14 and 15 from 291–5125 (Nunez) to the Lodge.

*Emerzian's* number (224–5012) shows a call from Fresno to the Lodge (373–3381) on January 12, 1972; another call on January 13; and two calls on January 17, 1972.

It is a reasonable inference that someone at the number at the Travelodge was another important cog in the communication system of Nunez and his co-defendants.

## THE SUMMARY OF THE PHONE CALLS

We have adopted, with certain minor corrections after checking the exhibits, the summary prepared by the Government of the other phone calls.

*Phone Calls—December 17–27, 1971*
(Counts 2 and 3)

On December 17, 1971, Steve Rutledge registered and checked into Room 16 at the Western Sundown Motel in Casa Grande, Arizona, under the name of Steve Martin. He testified that he was to wait there for a contact by Morgan; that after two days Morgan and Mason showed up, calling him from the airport at Casa Grande.

Roger Mason testified that he and Richard Morgan flew from California to Arizona, landing at the Three Point Airport near Casa Grande; and that they checked into the same motel together and shared the same room. Records show it was Room 5.

466

A registration slip from the Francisco Grande Hotel in Casa Grande, shows that a Gerald Jewell registered into Room 407 on December 18, 1971. The Francisco Grande's records show a long distance phone call made from Room 407 by "Jerry Jewel" on December 19, 1971, at 2:42 a. m., to Manuel Nunez in Redwood City, California.

The telephone bill for defendant Nunez' number (listed under his alias of Frank Martin) in Fresno, California, shows calls to the phones of Manuel Nunez and Mason. It shows a call on December 16, 1971, to Manuel Nunez in Redwood City; shows two calls to Manuel Nunez' phone on December 18; and on December 18, a collect call from a public phone in Redwood City was accepted at the Nunez' number. On December 20, two calls were placed from Nunez' home phone to Manuel Nunez' phone, one at 7:17 p. m. and one at 7:57 p. m. At 7:55 p. m., two minutes before the second call, a call was made from Nunez' number to Mason's number in Kerman.

Calls made from Room 16 of the Western Sundown Motel, which was occupied by Steve Rutledge registered as Steve Martin, were as follows: the morning of December 17, a call was made to Emerzian's phone in Fresno; the morning of December 19, a call was made to Manuel Nunez' number.

Calls were made from Room 5 of the Western Sundown Motel, which was occupied by Morgan and Mason during this time, as follows: on the morning of December 19, two calls were made to Mason's number; on December 20, two calls were made to Emerzian's number; on the morning of December 21, a call was placed to Emerzian's number and another to Mason's number; at 1:25 a. m. on December 22, a call was placed to Emerzian's number and at 9:00 a. m. a call was placed to Mason's number. On December 22, seventeen calls were placed from Room 11, sixteen by Martin and one by "Roger." Roger was Mason's first name. One of the calls was to Emerzian's number and another to Mason's number.

The telephone bill for Emerzian's (and Morgan's) number in Fresno reflects a collect call from the Western Sundown Motel on December 17, 1971, and two telephone calls to that motel the evening of December 18. The bill also shows that six calls were made in early December to Mason's phone in Kerman.

Emerzian's phone bill also shows that on December 19, 1971, a collect call was made from a public telephone in Casa Grande, Arizona, to Manuel Nunez' number and charged to Emerzian's phone. Emerzian's phone bill further shows that between December 18 and 27, five calls, one at 5:55 a. m. on December 19, were placed to Mason's number. On December 20, a call was placed to Manuel Nunez' number and a collect call was received from the Western Sundown Motel. On December 21, another call was placed to Manuel Nunez' number and two collect calls were received from the Western Sundown Motel. Also on December 21, there was a call from a public telephone in Fresno to Manuel Nunez' number, and another call from a public telephone to Manuel Nunez' number, billed to Emerzian's number. On December 22, there was a call from a public telephone in Fresno to the Western Sundown Motel, billed to his number. Also on December 22, a call from a public telephone in Oakland, California, to Manuel Nunez' number was billed to this number.

Other records show that during the period of December 18 through December 22, 1971, many calls were made from the rooms of co-defendants Jewell (Room 407 of the Francisco Grande), Rutledge (Room 16 of the Western Sundown Motel) and Morgan and Mason (Room 5 of the Western Sundown Motel) in Arizona, to the telephone of Manuel Nunez in Redwood City, California. During this same period of time calls were made to Manuel Nunez' number from Emerzian's and Morgan's number in Fresno, to which the co-defendants were also placing calls, and from a public telephone in Casa Grande. During

this same period of time Nunez' number shows four calls to Manuel Nunez' number in Redwood City and a collect call from a public telephone in Redwood City.

During the period of December 19 through 22, calls were placed from the room of co-defendants Morgan and Mason (Room 5 of the Western Sundown Motel) to Mason's number in Kerman. On December 20, a call from Nunez' number, to Mason's number.

### Phone Calls—December 29, 1971, to January 4, 1972

### (Counts 4 and 5)

Rutledge testified he came to Phoenix to assist in the load and was met at the Phoenix Airport by Morgan and Clark. The next day he helped Clark to take off from the Casa Grande airstrip and to unload the plane upon his return. Rutledge testified that when he and Clark returned to the Doubletree Inn in Scottsdale, where they were staying, Morgan and Jewell were waiting there. Morgan made a phone call to Frank, telling him everything went okey.

On December 29, 1971, a party of two checked into Room 206 of the Doubletree Inn under the name of Richard Martin, and stayed through January 4, 1972. The records indicate that, while two people initially registered into Room 206, on the second day the rate went up $3.00 per night, showing that most likely another bed had been put into the room.

The records of the Doubletree Inn show a long distance call was made from Room 206 by a Richard Martin at 6:39 a. m. on January 2 to Nunez' number in Fresno.

The records of the Doubletree Inn show also a telephone call made from Room 206 the morning of January 2, 1972, by a Steve Martin (Rutledge's alias) to Area Code 209 in California; a call made from Room 206 under the name of Clark to Area Code 408 in California; a collect call to Room 206 was made on January 3 from a "Jerry Jew" in Fresno. (The custodian of the hotel records testified the call was from a "Jerry Jewell.") There is also a record of a collect call to Steve Martin in Room 206 from a Richard Martin at Area Code 209 in California; and a collect call to Room 206 from a pay phone in Casa Grande on January 2.

The telephone bill for Nunez' number for this period shows that on December 29, 1971, a collect call was accepted at his number from the Doubletree Inn in Scottsdale, where Rutledge, Clark and Morgan were staying. Three more collect calls from the Doubletree Inn were accepted the next day, December 30. On December 31, a collect call from a public telephone in Eloy, Arizona, was accepted. On the same date another collect call from the Doubletree Inn in Scottsdale was accepted. On January 1, 1972, the approximate date of the load, three more collect calls were made from the Doubletree Inn to Nunez' phone. On January 2, a call was made from the Nunez phone to the phone at the stash house on 62nd Street in Scottsdale. On January 2, three more collect calls from the Doubletree Inn were received. Also on January 2, two more calls were made to the Doubletree Inn from different telephones in Fresno and charged to the Nunez' number. Again on January 2, a call was made from a telephone in Fresno to the stash house on 62nd Street in Scottsdale and charged to the Nunez phone. On January 3, two calls were made to Manuel Nunez in Redwood City, California and a collect call was received from the Doubletree Inn on January 3, 1972, and accepted at Nunez' number.

A telephone was installed at the stash house at 62nd Street in Scottsdale on December 30, 1971.

The telephone bill for the stash house shows that a call was made to Nunez' number on December 30, 1971.

The telephone bill for Emerzian's (and Morgan's) number at Fresno shows that on January 4 three calls were placed to the Doubletree Inn; two collect calls were received from the Doubletree Inn; and four calls were made to Manuel Nunez in Redwood City. Also on January 4, a collect call was received

from the stash house on 62nd Street and another collect call was received from the Holiday Inn in Scottsdale.

On January 4, Steve Rutledge was staying at the Holiday Inn. He had checked out of the Doubletree Inn and into Room 178 of the Holiday Inn in Scottsdale after the conclusion of the second load of marijuana. The records of the Holiday Inn show that on January 4, 1972, a party of two registered into Room 178 under the name of Steve Rutledge from Fresno, California, and stayed one night.

The records also show that on January 3 a call was made to Manuel Nunez in Redwood City from Nunez' phone, and on January 4 a call was made from the phone of co-defendants Emerzian and Morgan to Manuel Nunez.

### Phone Calls—January 5, 1972, to January 14, 1972
#### (Counts 6 and 7)

These counts involve the raid on the stash house at 62nd Street in Scottsdale and the seizure of defendant's yellow Ford pickup which was found to contain 774 pounds of marijuana.

Mike Hindman was the pilot for a load of marijuana seized January 7, 1972. The registration card from the Sun Dancer Hotel in Phoenix shows that Mike Hindman registered into Room 256 on January 4, 1972, for two nights.

The records of the Sun Dancer Hotel show two long distance calls were placed from Room 256 by "Hineman" on January 4: one was to the Nunez' phone and the other was to Hindman's unlisted number in Lebanon, Oregon; that on January 5, 1972, six long distance calls were placed from Room 256 by Hindman; of these, two were to his home phone in Oregon and two were to Nunez' telephone at his home in Fresno.

On January 6, 1972, Hindman registered at the Francisco Grande Hotel in Casa Grande, Arizona, in Room 307. He checked out on January 7.

The records of the Francisco Grande show that on January 6 a call was made from Room 307 by "Heinman" to the stash house at 62nd Street; calls were made on January 6 and 7 from Room 307 to Hindman's home phone in Oregon; and calls on January 6 and 7 from Room 307 to the Monterey Fairground Travelodge in Monterey, California. Nunez' telephone bill shows that he also made calls to the Monterey Fairground Travelodge on January 6 and 7.

The telephone bill for Hindman's phone in Oregon shows that on January 4, 1972, two days before Hindman checked into the Francisco Grande, a call was made from his phone to Nunez' phone. Hindman's telephone exchange in Oregon was Sweet Home. A telephone bill of Nunez shows that on January 8 he received a call from a public telephone at Sweet Home, Oregon. Another of Hindman's telephone bills shows that on January 14 a call was placed to Nunez' number.

The telephone bill for the stash house at 62nd Street in Scottsdale shows that on January 5 a call was placed to Nunez' phone; and that on January 7, the date of the arrests, a call was made to Nunez' phone.

The telephone bill for Emerzian's number shows a call to Mason's phone on January 4. A call was made at 12:31 a. m. on January 5 to the Holiday Inn in Scottsdale, and on the same day a collect call was received from the Holiday Inn. On January 8, a call was placed to Mason's number and on January 9 a call was placed to Manuel Nunez' number. On January 10, five calls were made to Manuel Nunez' number and between January 10 and 17 three calls were made to Mason's number.

On January 12, 13 and 17, a total of four calls were made to Monterey Fairground Travelodge.

### Counts 8 and 9

No record of phone calls was introduced as to Counts 8 and 9. As mentioned above, under the concurrent sentence doctrine, we have not considered Counts 8 and 9.